All rise. The United States Court of Appeals for the Ninth Circuit is now in session. Please be seated. Well, welcome to the Ninth Circuit. We are doing, I think, what might be called a soft opening. We've got two of the three judges here in Seattle on the bench. The third judge, Judge Collins, is on video, as I think you can see him from Pasadena, and we're having the lawyers by video. We've submitted a fair number of cases today. We've only got two argued cases, the first of which is Hawkins v. United States, and I see two lawyers on the screen. I assume you're the two lawyers for Hawkins, is that correct? Yes, Your Honor. And we have, it's Ms. Sykes who goes first. Welcome. We've read your briefs. We look forward to your arguments. Thank you, Your Honor, and I apologize as my dog starts. When would you like me to start? When you're ready. It looks as though we've set this for 15 minutes per side, and if the dog takes some of your time, we'll give it back to you.  No, no, no, please go ahead. I apologize. I'm sorry. That's all right. When you're ready. Okay, thank you. And good afternoon. I'm Sykes on behalf of the appellant, Ms. Sybilita Hawkins, and the main issue here is whether Ms. Hawkins' federal tort claims act, the FTCA claims, are of the type that fall under FECA, the Federal Employees' Compensation Act, and I believe, or we believe, the simple answer is no. As an introduction to the lawsuit arises out of the personal injury caused by the employees of the VA Puget Sound health care system, while Ms. Hawkins was under their care and direction. Ms. Hawkins, the appellant, made three arguments in support of her claim in her complaint that her injuries do not fall under FECA. One, that her mental decompensation is not an injury covered by FECA. Two, that her FTCA malpractice claims are factually separate from her FECA claims, and three, her injuries were not covered by FECA. Would you continue to assert that second argument, because the agency found that it wasn't, the injury wasn't related to her employment, and so are you seeking to now take advantage of that finding and then argue that the FTCA survives in light of it, or are you just arguing the mental, the physical, emotional injury line? I'm doing the physical emotional issue. I believe that's what you're asking, is that correct? Well, I'm asking you, so you're not making any argument to us that in light of the determination of the agency that it's not employment related, that that means that there's now jurisdiction under the FTCA. That is, I'm sorry, I'm having a hard time. That is jurisdiction under who? That there's jurisdiction under the FTCA, that if it's not employment related, now you can sue for the malpractice under the FTCA. You're not making that argument. We're making, that is, that that jurisdiction lies under the FTCA. That's what we're stating. Am I understanding you correct? Well, but there's two ways you could get there. You could get there by saying that it, you know, the FECA doesn't cover purely emotional injuries, and that's what's at issue here. Or you could say that because it's not employment related, it's not within the scope of the FECA, and therefore, the malpractice is suable under the FTCA. And so, those are two different arguments, and I'm trying to see if you're making both or just the first. I think those are very good points. I think I'm almost making both of those points. One being that the issue was, the initial argument that she made in her complaint was the injury. The initial argument was the injury that she claimed was while she was at work, meaning that she was claiming an EEOC injury, meaning it was an injury while she was at work within the scope. The second injury that she was claiming was, it was a malpractice claim, the FTCA claim from Dr. Doan, and I think that's what you're addressing. The second, the separate issue, no physicality tied to her mental injury. I think that's the issue that you're, the question that you're asking. I believe that's what you're stating. I mean, it's your argument. I'm just trying to discern what it is. Yeah, and I think it's the second issue that the FTCA claim remains here, that this was outside of her scope as work and that the FTCA claim remains. I believe that's what you're asking. And I'm just having a very hard time hearing because there's kind of an echo, so I apologize. Let me ask you this. As to the point of physical versus emotional injury, the district court found that there was a sort of persistent and severe lack of sleep, and the district court said, well, that's physical, therefore, this is not purely emotional, and therefore, it doesn't come within the scope of our Sheehan case. How do you respond to that? Well, I don't think that that's what the district court found. I think the district court was as to her abdominal issues. That was the only physicality issue that they discerned. I think when the issue was remanded back down, there was an issue that was raised as to some extreme sleep and some headaches that she had. So, I think the only physical issue that they raised was the issue at footnote seven in the, I think it was the July 2019 order, where they brought up in one of the declarations for one of the orders for one of Ms. Hawkins' doctors, where they raised the issue of her having H. pylori, and H. pylori is something that you get in the community. So, the only issue that she had was a psychological issue. There was no physical issue that was tied to her actual injury. I'm reading from the district court's second order on page eight and nine of that order, and the district judge writes, this is on remand, specifically, the court determined that Ms. Hawkins alleged that she suffered a physical injury, emotional distress, coupled with her extreme sleeplessness that arose out of, and it seems to me that the district judge is treating the extreme sleeplessness as a physical injury. Am I wrong on that? I believe you are wrong. I believe that was a precondition that she had the extreme sleeplessness. In one of the doctor's notes, she had stated that she had had previous issues with sleep, and that one of her conditions was, when she did have these previous issues with sleep, she would have these psychotic breaks. So, her precondition, which I stated in my opening, was, that was one of her preconditions, was her insomnia. So, her extreme... But I'll read the rest of the sentence, then, from the district court opinion. Extreme sleeplessness that arose as a result of three years of workplace harassment and a psychotic episode that took place at work. So, as the district judge is saying, we've got extreme... She might have had insomnia problems before, but the district court concludes that she's got extreme sleeplessness arising out of three years of work harassment. That's the allegation. That, I don't believe that was the allegation. I believe the allegation that she had, her only psychological injury that she was claiming, was not the extreme sleeplessness that you're claiming. It was a personal injury claim that was divorced, which this court had decided, was divorced from any claim of physical injury, and is not cognizable under FICA. That issue... Go ahead. Yeah, yes. Put into one side, in a sense, the argument as to who raised what when, how would you characterize extreme sleeplessness? Would you characterize that as a physical injury? I would not characterize that as a physical injury. I would say that was a question of fact, and that question of fact would have to be determined by the court, and I don't believe that that was an issue that was raised. I believe... No, I've got a different question, not whether it's a question of fact. Just assume for a moment that your client suffers from, or suffered from, extreme sleeplessness. Is extreme sleeplessness a physical injury, or is it something that's purely emotional? I would say it's purely emotional. Because? I would say there was a purely emotional injury. I don't think that when she stated in her CA-2, she stated that she indicated that all her psychological injuries were a result, that she only had psychological injuries. That was her only injuries that she resulted from those periods. Resulted in her psychological break. There was not any specific physical injury. It was... It was psychological, and it falls within that separation of divorcing any sort of physical injuries that this court has held do not fall within FICA. Okay. I mean, specifically, Your Honor, this District Court's acceptance of the... The District Court talked about the Carver Rule, and I think the Carver Rule should not be accepted here when they talk about is contrary to the Sheehan Rule. The Ninth Circuit has held that emotional or psychological injuries divorced from any claim or physical injury are not cognizable under FICA. And here, her, as you stated, that this extreme physical injury that she did not suffer from, it was all psychological. Throughout all of her claims, she only stated that she suffered psychological injuries in her CA2. The issue of her having insomnia is a question of fact, and there's no proof in the record when she stated to Dr. Doan, she claimed that she was suffering from difficulty sleeping, and she requested a higher dose of that medication. She stated, you have to wait for that medication to work. That, again, is not a physical... It's not a physical, it's a psychological complaint, and it does not... I don't believe that that should fall under the FICA. It's not colorably covered under FICA. It's an issue that should still remain under FDCA claim. It's a medical malpractice claim. Okay. Perhaps at this point, let's hear from the government, and then you'll have quite a long time to respond. Unless you want to say something further in your initial argument, it's up to you. How would you like to go? Do you want to hear from the government and then respond? That's fine. Okay. Let's hear from the government, and then you've got a lot of time to respond. Good afternoon, Your Honors, and may it please the Court. I'm Teal Miller on behalf of the United States. I want to start where Judge Collins started and take issue with his characterization of what the Secretary of Labor decided in this case. The District Court correctly understood that Secretary of Labor determined that plaintiff alleged a claim of workplace injury, but failed to support her claim. Well, what it says on the very first line of that order is the evidence does not establish that you were injured in the performance of duty as required for coverage under the FECA. So now you're claiming, and the District Court agreed, that that's not a coverage determination. It sounds exactly what it is. It's not covered by the FECA because it wasn't employment-related. Judge Collins, performance of duty is not scope of coverage. I think that they sound similar, but under the Secretary of Labor's understanding and regime, they're two different things. And this circumstance, not, is this the kind of claim that is covered, but have you shown that this happened while you were at work? But we decided, Lance, on the assumption that the malpractice claim cutoff is one that is being covered by an employment-related injury scheme. And so to create a regime in which employees suffer injury, you find that they're not employment-related so they get nothing for that. And then they get nothing for the completely separate malpractice. How is that a sensible reading of these statutes? It's a sensible reading of the statute for the reasons that the Seventh Circuit explored in Fuqua. And that is that a claimant shouldn't be able to come in and do a desolatory job of proving a FECA claim and then be in a better position with respect to the Federal Tort Claims Act than they would be if they'd actually proven up their FECA claim. And the Secretary of Labor here told Ms. Hawkins, here's the additional evidence we need from you in order to accept your claim. And I just don't think there's any way to read the rest of the decision as a decision that this claim couldn't be covered, as opposed to a decision that she failed to prove her case. And I'm going to direct the Court to page 351 of the record and the discussion of the workplace harassment claim. And what the Secretary of Labor, or OWCP, said is that actions of an employee's supervisor, which the employee characterizes harassment, may constitute a factor of employment, giving rise to coverage under the Act. An employee's allegations that an emotional condition was caused or aggravated by harassment, discrimination, or improper treatment on the part of the employee's superiors must be supported by evidence apart from the employee's own statements. And then they told her on the next page, come to us with independent evidence, such as EEO findings, grievance decisions, or witness statements, in order to prove your case. And she had three options when she got this decision. She could have sought reconsideration, she could have sought a hearing, or she could have sought, I'm sorry, there's a further type of administrative review of that. But is FICA designed to compensate for injuries that are non-employment related? No, but this was, if she had proven it, this was... The finding is it's not employment related. So why does FICA have any precautions? Your Honor, I am here as a representative of the United States, interpreting for you what the Secretary of Labor's decision means. And I'm telling you that when it says at page 350, where an employee experiences emotional stress in carrying out employment duties, the disability is generally regarded as due to an injury arising out of or in the course of employment. The performance of duty language in the first line, the district court was correct. That does not mean this is outside of the scope of FICA's coverage. It would make no sense, really, the rest of the opinion, to read it that way. This is a decision that the Secretary of Labor has provided, and as the district court recognized, that says this workplace bullying is covered, and here's how you would prove it. And under Lance, all the injury, the exacerbation of the injury that falls from that is part of the same claim. So the thing for Ms. Hawkins to do when she got this decision was not to turn to the FTCA, but under the bargain of workers' compensation systems, an employee doesn't have to prove fault and is compensated, receives, you know, a large portion of their prior pay, but they give up the right to bring a tort claim. Can I ask this, just following up on Judge Collins's line of inquiry? Let's say that, I mean, it seems undeniable that the plaintiff did suffer some kind of a mental break or whatever you want to call it, right? And it's just a question of, was that attributable, I gather, to harassment she experienced at work or maybe to some outside stressor that caused her to have that break? And I guess what I hear Judge Collins asking is, well, okay, so she goes and she tries to prove that it was the workplace harassment that caused this, and it turns out that the Secretary says, no, you haven't shown that. We're assuming that it's attributable to some outside cause. And so if that's true, it does seem odd that she's then precluded from pursuing this completely separate malpractice case that, you know, deals with her ability to get treatment for that injury, right? Well, I think that oddity is more a reflection of the fact that the employer here is the health care provider as well as the employer. And the Federal Employee Compensation Act deals with that oddity by having provisions about subrogation and adjustment of award benefit in the event, for example, if you consider a circumstance like this, only the health care was provided by a third party. If the employee obtained compensation through FECA and then brought a malpractice action against the third party, the United States would have a right of in some sense, but the unfairness comes from, or the perceived unfairness comes from the failure to prove the case in the first place. And I think... It comes from that's what the facts are. I mean, maybe it's not fault. It's just those are the facts. She really did have a preexisting mental condition. And then when she got treatment, they did a bad job. And, but she doesn't get to sue because it was arguably, but not in fact, employment related. That seems very odd. Well, again, I don't think we're in a case where this is arguably employment related. I think we're in a case where the Secretary of Labor has conclusively determined in a determination that Congress has said is unreviewable that this is employment related. It's just unproven. And I, again... That I do not understand. I understand the abstract category could be employment related. It is certainly possible that harassment and bullying in the office could cause one to have a breakdown. That's the abstract proposition. But what the in fact, that is not this case. This case, the conditions are not employment related, which seems to place it outside of the FECA regime. Well, I would point this court again to the language that the secretary used at page 351 or the OWCP used at page 351. With respect to both the failed mediation and the allegation of workplace bullying, the secretary said, both of these things are workplace related. Both of these things are allegations we would accept under FECA. You just haven't shown that they took place. And here's how to do it. And she didn't do it. Part of the problem I'm having, I think maybe all three of us on the bench are having, is that the language in the decision is susceptible of various interpretations. I'll just read the first sentence, the one alluded to by Judge Collins at the beginning of the argument. The first sentence is your claim for compensation is denied because the evidence does not establish that you were injured in the performance of a duty as required for coverage. Well, that could mean it was denied because you weren't injured. Or it could be you weren't injured in the performance of duty. So it may be denying that there's any cognizable injury during the time that they were done, maybe denial of injury altogether. So the opinion actually says that she established, it goes through the steps of timely filed, civil employee, fact of injury, performance of duty, and causal relationship. This is at page 350. And it says it accepts many of those parts, but it says performance of duty is what she hasn't shown. But performance of duty, and I want to go back to this point. Performance of duty is not scope of coverage. Those two terms do not mean the same things. The statute 8102, the Federal Employees' Compensation Act, that section says, disability or death of an employee resulting from personal injury sustained in the performance of duty. That's where the phrase performance of duty comes from. So the question is just, is this arising out of and in the course of working? And what they're saying when they say it isn't arising out of in the course of working is you haven't shown that these events that you allege actually happened to you. Let me give you a simple case that's not this case, and it's not tangled up with the definitional difficulties between emotional injury and physical injury. So this is not this case, but I'm trying to understand the position of the government in here. Let's assume that we have someone who's working in a job and is physically injured. His leg is very badly damaged. So there's no question about what he has if he could claim. He is then treated by federal government doctors, and in the course of that treatment, there's malpractice. And the injury that he suffered is now greatly exacerbated. And he brings a Federal Tort Claims Act based not on the original injury but upon the malpractice. Is that suit outside the scope of Federal Tort Claims Act? It is under Lance. I don't understand why that should be so. Because there's a workplace injury, I get that one, that comes under FECA. But after the workplace injury, he's being treated by a federal doctor, and the doctor does malpractice. Why is that not a separate Tort Claims case? Because the Secretary would adjust. In that case, what happens is the Secretary adjusts the award of benefits. It's not that the malpractice isn't covered, it's that it's part of the same claim. And that's what Lance says, is that an injury that is exacerbated by a further injury under the second restatement of torts under Judge Hand's decision in Valencia and under Lance is part of the same injury. And so it becomes part of the FECA. So let me give you another example then. Let's say that I have, for some reason, coverage as a federal employee, and I get treatment by federal doctors at Walter Reed. I'm not in the military, so I don't want to get into that part of the problem. But I have a right to be covered by, to be treated by federal doctors. I'm injured hiking. I come into Walter Reed, and the doctors at Walter Reed who treat me engage in malpractice. Do I have a Federal Tort Claims Act against the doctors at, and against the United States because of the mistreatment at Walter Reed? So you're injured hiking on your own time, not, not, not. Absolutely. I'm just coming into the hospital because I got injured. I got a really bad lay because I fell and it broke. I come to Walter Reed, and the doctor engages in an egregious malpractice. Do I have a, do I have a Federal Tort Claims Act claim? Yes. So why should it be different if my injury takes place at the workplace? I've got the same, same bad doctor who does the same bad thing, and you say in one case I've got a Tort Claims Act claim, and the other I don't. I don't get it. Because that's the bargain of the workers' compensation system. The no-fault system compensates the employee, but doesn't allow them to sue in tort. And the tort is considered not just the injury, but a foreseeable exacerbation. Well, wait a minute. Excuse me. Why is malpractice by a doctor a foreseeable exacerbation? Because Lance says it is, and the Restatement Second of Tort says it is. So why do I care about Lance? Is that, is that a Ninth Circuit case? I know the answer to that question. It is. It is a binding Ninth Circuit decision, and it's very clear on this point that malpractice that's subsequent to an injury by, to a federal employee that is compensable under FECA is part of that FECA claim, and is compensable under the FECA claim. We're not leaving that, you know, the injured leg out in the cold. And again, if you were injured by a third party, not a federal doctor, and you brought a malpractice claim, and you have a FECA claim, there's segregation, and there's adjustment of your compensation. So you're not really in a different situation than you would be because you are, because it's a federal doctor. But what about... Let me give you a different... Oh, go ahead. Go ahead. Let me give you a different hypothetical. Suppose that two employees have a bad relationship at work, and one of them comes to the home of the other, and assaults them. And it's just, it's a petty personal dispute, comes over the house, assaults them. That person then goes to the hospital, and it's a federal hospital, and they get serious malpractice. They then sue under the FTCA, and the district court says, well, we need to sort out whether this was employment related, because these two people were employment related, so I'm going to stay it. And then the labor department says, no, it's not employment related, no FECA coverage. Can the FTCA claim go forward in that? Yes. It can. Because the Secretary of Labor has said it is not within FECA's coverage. Well, what the Secretary said is that it's not shown that it's employment related. So again, I think this reflects... The Secretary of Labor's position is that the OWC decision in this case accepts that this is employment related. I can't diagram that, to be honest. It's either employment related or it's not, and the determination is that it wasn't. No, the determination here is that it was, but that it was unproven. If she had come forward and provided, for example, if you look at page 374 of the record, it's her narrative statement of what happened to her at work, at the workplace, and she says there were all kinds of witnesses to the bullying. And the Secretary said, one of the things that could prove your case is a witness statement. So let's say in response to this decision by the OWCP, she had submitted a witness statement saying, I witnessed this workplace bullying. Then the claim might well have moved forward. What happened here wasn't that this isn't... The Secretary did not say, I don't care what kind of evidence you have. This isn't a FECA claim. The Secretary said, this is a FECA claim. You haven't proven it. Here's what you need to do to prove it. And she still can prove it. She can still go to the Secretary at this point and ask for reopening and try to prove, for example, present the witness statements and try and prove that the workplace bullying happened. And if she proves that, then she would be compensated for that injury and the medical malpractice injury. So what's happened here is just like in Fuqua, where there was an employee who was told, we think you have a FECA claim. He claimed an injury because the Postal Service closed his center and wouldn't move him to a place he wanted to be. And he said he suffered an injury as a result of that. And the Secretary said, or the District Court said, bring a FECA claim. And he didn't submit the evidence the Secretary asked for. And the Seventh Circuit said under FECA's bargain, you have to participate in that process. You shouldn't be in a better position to sue under the FTCA when you don't prove your FECA claim than you are when you do. I need you to help me understand the significance of the fact that there's no witness. As I understand your argument, you're saying, well, she didn't bring in a witness to say that the bullying took place. And therefore, the OWCP is allowed to say, well, this was not work related. Well, that means that, in other words, they held, well, this didn't happen at work. OK, well, it didn't happen at work. I'm back to my hiker example. It didn't happen at work. So therefore, we got a malpractice claim. What the OWPC said is this happened. She alleges this happened at work. If she could prove it, it would be a workplace injury. But she hasn't proven it. Well, but hang on a second. But there's no there's no problem with what she suffered these breaks. So if she didn't prove that it happened at work, it must happen somewhere else. Sorry, the injury that caused the injury that she says alleges that she alleges caused the breaks on the. No, wait, wait a minute to make sure we're on the same page. OK, I'm now saying she she's not proven what caused it. All she's proven is the condition. But then she says there was malpractice in treating the condition. And if she hasn't proved that it caused at work, that means we're assuming that it happened outside of work. And so now she has a malpractice claim for a condition that's undisputed that she has. And the OWCP has said, well, it didn't happen at work. Well, I'm back to my hiker example, aren't I? Because it's an injury that happened not at work. And then it was badly treated by malpractice. Why don't I have a malpractice claim? Your Honor, your hiker example is totally distinct because it is a person who happens to be a federal employee injured on their own time. Here, the secretary of labor has conclusively said that this injury is covered by FICA if proven. And the problem is it hasn't been proven. But what hasn't been proven? The fact of the injury, the fact that she's suffering in this sense, what hasn't been proven? What hasn't been proven is it's not the fact of the injury. They're not doubting the allegation of injury. They're doubting that the emotional condition was caused or aggravated by harassment, discrimination or improper treatment. So there we go. So if it's not been proven that it happened by something that happened at work, well, that means it might have happened someplace else, right? I mean, if it didn't happen at work, but we have the injury, it happened someplace else. So why am I not back to my hiker example? Because her allegation is that it happened at work. If you read her allegation at page 374 through C-75, this is all one event. She was at work for a long period of time. She was harassed by a supervisor. That harassment caused a first episode of decompensation, which was exacerbated by medical health practice and led to a psychotic break. But that then puts the government in a really nice position. They can say, well, we accept the version that you say it happened at work. We're going to stick with that. We don't believe it happened at work. And if it truly didn't happen at work, you would have a malpractice claim. But because you claimed it happened at work, you got nothing. So, I mean, she's had two ways from Sunday. I think, Your Honor, I think it only feels that way in this case because she didn't go back to the OWPCP with the evidence they asked for. And she's put herself in effectively in a better position. She's choosing. She's opting her remedy in a way that's not permitted. A federal employee under the Federal Employees Compensation Act by not proving her FICA claims. Her whole theory of her FICA claim is this is something that happened at work. She just decided effectively she's being allowed to opt to carve out a medical malpractice claim under the Federal Tort Claims Act in a way that is contrary to the bargain that the Supreme Court recognized in Lucky Martin that the Federal Employees Compensation Act gives all to all of us federal employees. I just want to very quickly say that to the extent your decision turns on the presence or absence of a physical injury, there was indeed a physical injury here. And not just the profound insomnia, but also headaches. Both are objective physical manifestations in the body of the type in Moe of which was ulcerative colitis exacerbated by PTSD. So there really isn't this isn't a case in the universe of purely emotional injury. You know, we seem to be out of step with the other circuits on the question of physical versus emotional injury. I kind of got a sense in your brief that you wouldn't mind if we joined the other circuits. That's right, your honor. The Secretary of Labor does not recognize the physical emotional distinction that that this court adopted, arguably, and she had, although I think that it has has pulled back from it a great deal. It didn't. It did not adopt it, arguably, and she and it clearly adopted it and she and it may have stepped back from it. So the point of it may be a little uncertain after after a couple of our later cases, particularly Judge Dorothy Nelson's case. But no, there was no ambiguity and she and I agree. That's a better that's a better characterization, your honor. I'm sorry. So are you asking for on my reconsideration so we can get rid of she and your honor? I don't think it's necessary here because there was a physical injury. But if you disagree, then I suppose, yes. OK, good. Thank you. We took you well over time for which we apologize. Miss Sykes, you've saved a lot of time and we took the government so much time. You go right ahead and say what you need to say. Thank you, your honor. Specifically, I just wanted to get to some of the issues that you raised, one being the hiker, the hiker example here specifically. I wanted to say that I think there is some confusion with what the Department of Labor I'm sorry, actually ruled on. What I have here is the Department of Labor rule that after a thorough review of all the not been met. They said specifically her case was denied, not because the emotional condition sustained a performance of duty would not be covered, but rather because the evidence is insufficient to establish that a medical condition arose during the course of employment and within the scope of compensable work factors. And again, the issue here being, you know, the actual injury, workplace injury. And I go to that, what you kept saying, the hiker episode. Here, we agree that there was no workplace injury, that my client, Miss Hawkins, actually was injured. If you look at the timeline, she had her mental break October 22, 2011. She then was hospitalized, I believe for three days, followed up at the Veteran Hospital October 26. After that is when the actual malpractice occurred. The malpractice being, she falls out with Dr. Doan. She was experiencing these psychological injuries that she was claiming, no physical injuries. And that's a she-in case, directly the she-in case, being, again, I'm going to go how the Ninth Circuit has defined what exactly is an injury. And excuse me as I find the definition. WSC Section 8101, Subsection 5, defining injuries of physical harm. Here, again, there is no proof that my client had any physical injury. We can somehow try to say that the issue with, she just brought up something with the abdomen. H. pylori is the only issue that was raised, again, when footnote 7 in the order, the motion to dismiss order. And that is document 42, I shouldn't say document 42, that is on the docket is 42. The judges, U.S. District Court's order, where they raised the issue of her having this H. pylori episode. That's the only issue of her having any sort of physical component. Even with that component, that was years later. That was in November of 2011. Much, much later than the actual incident that she's complaining. The psychotic episode that she was, this ongoing episode, it was from October 26 that she was discharged from the hospital where she goes to the physician, continues to complain of having this increasing anxiety, difficulty sleeping. And then she has a psychotic break. The psychotic break being where this episode occurs and she attacks her mother. That's the medical malpractice that she's claiming was the ill treatment or the, I should say the ill treatment, the mistreatment of the doctor not medicating her properly when she was continuing to describe her symptoms. Her symptoms being her inability to sleep, her past issues of having psychotic breaks when she was having these insomnia, anxiety, and these again were things that she had prior that she had told Dr. Doan. This was the issue that she was complaining of. Not something that she was, at this point, she was not necessarily an employee. She was on administrative leave from the VA. She was still considered an employee, per se, but she was not actively working. So, she was not working as a registered nurse at this time, but she was seeking treatment at the VA. So, with Tiger's incident, yes, she was seeking treatment at a VA facility, but she was not actively working as an employee. And we believe that this issue, it's directly within Sheehan, as the court has ruled here, where you have the district court had lacked jurisdiction to hear Sheehan's claim because it was not causable under FECA. You had stated FECA compensates government employees only for physical harm, where she alleged injury, emotional distress, was divorced from any claim of physical harm. The same as in Gertie, where you cited with approval Newman v. Legal Services, where you stated a standing for the proposition that because a claim for emotional stress is not covered by FECA, FECA is not the employee's exclusive remedy. Here, we believe that Ms. Hawkins' claim, her exclusive remedy here is a FECA claim, that it was not an employment-related claim. Okay. I think we got it. Thank both sides for your helpful arguments. The case of Hawkins v. United States of America is now submitted for decision. Thank you very much.
judges: W. Fletcher, Watford, Collins